**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| GUY CARPENTER & COMPANY, INC., | Civil No. 05-1623 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JOHN B. COLLINS & ASSOCIATES, INC.; STEPHEN UNDERDAL; TODD MOCKLER; RANDY FLODEN; ROBERT ROEHRIG; and HANNAH KUHN, | |
| Defendants. | |

Linda T. Coberly and Derek G. Barella, **WINSTON & STRAWN**, 35 West Wacker Drive, 90 South Seventh Street, Chicago, IL 60601; and Thomas E. Marshall, **JACKSON LEWIS, LLP**, Suite 1450, 150 Fifth Street, Minneapolis, MN 55402, for plaintiff.

J. Jackson, Elizabeth S. Wright, and Marisa A. Hesse, **DORSEY & WHITNEY, LLP**, Suite 1500, 50 South Sixth Street, Minneapolis, MN 55402, for defendants.

Guy Carpenter & Company ("Carpenter") brings this lawsuit against former employees Stephen Underdal ("Underdal"), Todd Mockler ("Mockler"), Randy Floden ("Floden"), Robert Roehrig ("Roehrig"), and Hannah Kuhn ("Kuhn"), as well as their new employer and Carpenter's competitor, John B. Collins & Associates ("Collins") asserting claims for breach of contract, tortious interference with contract, misappropriation of trade secrets, and common law breach of the duty of loyalty, unjust enrichment and unfair competition. The parties have filed cross motions for summary

judgment. For the reasons explained below, the Court grants in part and denies in part the motions.

## BACKGROUND

Carpenter is a reinsurance broker. Underdal and Mockler are former employees of Carpenter, and recently left Carpenter to work for Collins, Carpenter's competitor. Carpenter asserts that Underdal and Mockler are bound by non-solicitation agreements, which prohibit them from soliciting Carpenter's clients.

In 1994, Underdal and Mockler each signed employment agreements ("Sedgwick Agreement")[1] with their employer at the time, Sedgwick Payne Company ("Sedgwick"). The Sedgwick Agreement contains a non-solicitation provision, as well as a successor provision, which states that the Agreement may not be assigned without consent of the parties. In 1998, Sedgwick merged with Carpenter, and Underdal and Mockler became Carpenter employees. Notwithstanding the Successors clause in their Sedgwick Agreements, Carpenter never asked Underdal and Mockler to consent to the assignment of the Sedgwick Agreement to Carpenter. In July 2005, Underdal and Mockler each resigned from Carpenter and went to work for Collins.

Floden, Kuhn, and Roehrig worked with Underdal and Mockler at Carpenter. None of them worked at Sedgwick previously. Kuhn and Floden joined Carpenter in June 2002, and Roehrig joined Carpenter in March 2003. Each of them signed Confidentiality and Ownership Rights Agreements with Carpenter, which require them to

---

[1] Underdal's and Mockler's Agreements are identical in all respects relevant to this motion.

return confidential information to Carpenter upon the termination of their employment and not to use or disclose confidential information (Nondisclosure Agreements). Floden, Kuhn and Roehrig also left Carpenter for Collins in July 2005. Carpenter asserts that Floden, Roehrig and Kuhn are violating their Nondisclosure Agreements.

## ANALYSIS

**I.     Summary Judgment Standard**

Summary judgment is appropriate in the absence of any genuine issue of material fact, and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *See*, *e.g.*, *Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995); *Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003).

## II.   Misappropriation of Trade Secrets

Carpenter raises trade misappropriation claims against all defendants in Counts III and VI of the complaint, alleging that they received information relating to Carpenter's reinsurance clients, including contact persons, preferences, and prior reinsurance history, and arguing that this information is protectible as a trade secret. Defendants seek summary judgment on this claim.

In order to succeed on a claim of misappropriation of trade secrets, Carpenter must be able to show that: (1) a trade secret existed; (2) defendants acquired the trade secret through a confidential relationship; and (3) defendants used or disclosed the trade secret. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897 (Minn. 1983). Generally known principles in the industry cannot be considered trade secrets and are not entitled to protection. *See I-Systems, Inc. v. Softwares, Inc.*, 2005 WL 1430323, at *5 (D. Minn. Mar. 7, 2005). Similarly, information that is readily ascertainable by proper means, or information that comprises general skills and knowledge acquired in the course of employment, do not constitute trade secrets. *See Lasermaster Corp. v. Sentinel Imaging*, 931 F. Supp. 628, 637 (D. Minn. 1996); *Fleming Sales Co. v. Bailey*, 611 F. Supp. 507, 512 (N.D. Ill. 1985).

For example, in *Fleming*, the court held that information as to customers, including knowledge of contact persons, prior purchasing history, and product and service requirements did not constitute trade secrets under the Uniform Trade Secrets Act, reasoning that such information was "readily ascertainable by proper means over the course of time without efforts beyond those ordinarily exerted by salesmen . . . ."

*Fleming*, 611 F. Supp. at 512, 514.  Further, the court stated that such information "comprises general skills and knowledge acquired in the course of employment.  Those are things an employee is free to take and to use in later pursuits, especially if they do not take the form of written records, compilations or analyses." *Id.* at 514.

Similarly, in *Lasermaster*, the court determined that the identity of the plaintiff's customers, as well as the key contacts at those customers, did not constitute trade secrets. *Lasermaster*, 931 F. Supp. at 637.  Although it was undisputed that the defendant had identified roughly forty customers with whom he had become familiar during his employment at the plaintiff, the court noted that the information was readily accessible. *Id.*  Because the information was readily accessible, the court held that the information was not protectible as a trade secret.  *Id.*

Viewing the facts in the light most favorable to the nonmovant, as the Court must on a motion for summary judgment, the Court finds that Carpenter's claim of trade secret misappropriation fails as a matter of law.  First, Carpenter's description of the confidential information that defendants allegedly possess – client identities, preferences, and purchasing history – is vague and non-specific.  Similarly, Carpenter fails to specify the confidential information that defendants are allegedly divulging.  Rather, Carpenter rests on its conclusory assertion that defendants either have or will disclose confidential information.  Carpenter's failure to identify trade secrets with specificity renders the Court powerless to enforce a trade secret claim.  *See Lisec America, Inc. v. Wiedmayer*, 2005 WL 3143985, at *5 (D. Minn. Nov. 23, 2005); *Internet Inc. v. Tensar Polytechnologies, Inc.*, 2005 WL 2453170, at *6 n.8 (D. Minn. Oct. 3, 2005) ("Failure to

identify the trade secrets with sufficient specificity renders the Court powerless to enforce any trade secret claim.") (quoting *Porous Media Corp. v. Midland Brake Inc.*, 187 F.R.D. 598, 600 (D. Minn. 1999)).

Second, even if Carpenter's description of the information at issue here is sufficiently specific to enable the Court to enforce its trade secret claim, that information does not constitute a trade secret and is not entitled to protection. Here, as in *Fleming* and *Lasermaster*, the information Carpenter seeks to protect consists of the kind of general information that defendants acquired while working for Carpenter in the normal course of their employment. Although Carpenter argues that this case is similar to *Surgidev Corp. v. Eye Technology, Inc.,* 648 F. Supp. 661 (D. Minn. 1986), *Surgidev* is distinguishable from this case. In *Surgidev*, the plaintiff proffered substantial, specific evidence demonstrating that the identity of high volume implanters was considered to be confidential in the opthamalogical industry, and the court determined that such information was protectible as a trade secret. *Id.* at 682. Here, in contrast, Carpenter has not offered any evidence, aside from conclusory statements, showing that the information that defendants allegedly took with them is considered highly confidential in the reinsurance industry. Indeed, the information that Carpenter seeks to protect is limited to the bare minimum of information necessary to issue a reinsurance contract, and which must, under Minnesota law, be disclosed by the client to the broker when negotiating a new contract. As such, the information is readily accessible by proper means, and therefore is not entitled to protection as a trade secret. Accordingly, the Court grants

defendants' motion for summary judgment on dismisses Carpenter's trade secret misappropriation claims (Counts III, VI).

**III.  Breach of Contract – Floden, Roehrig and Kuhn**

In Count II of the complaint, Carpenter asserts breach of contract claims against Floden, Roehrig and Kuhn, alleging that they received confidential information and that they took this information with them to Collins.  Carpenter further alleges that Floden, Roehrig and Kuhn have either already disclosed that confidential information, or that they will inevitably disclose that information, in breach of their Nondisclosure Agreements.  Defendants seek summary judgment on this claim.

Here, as in Carpenter's trade secret misappropriation claim, Carpenter has failed to identify with specificity the confidential information that Floden, Roehrig and Kuhn allegedly possess, beyond the minimal information relating to clients' identities, preferences, and reinsurance history.  Notably, Carpenter does not allege that Floden, Roehrig or Kuhn took with them any physical files, notebooks, lists, or computer disks. *Cf. Fleming*, 611 F. Supp. at 514 (an employee may take information acquired in the course of employment, "especially if they do not take the form of written records, compilations or analyses.").  Moreover, to the extent Carpenter is arguing that general, minimal client information, recorded only in the memory of its former employees when they move to a different employer, could constitute "confidential information" subject to protection under a non-disclosure agreement, Carpenter has failed to offer any specific evidence of disclosure of such information by Floden, Roehrig or Kuhn.  Similarly, Carpenter has failed to offer any evidence tending to show that they would "inevitably

disclose" such information. To the contrary, the evidence is undisputed that in the reinsurance industry, the client, under both industry norms and Minnesota law, discloses such information to the broker whenever negotiating a new contract. Because Carpenter has failed to identify with specificity any confidential information that Floden, Roehrig or Kuhn has allegedly disclosed, there is no genuine issue of material fact as to this claim, and the Court finds that they are not in breach of their Nondisclosure Agreements. Accordingly, the Court grants defendants' motion for summary judgment on Carpenter's breach of contract claim against Floden, Roehrig, and Kuhn (Count II).

**IV.    Breach of Contract – Underdal and Mockler**

In Count I of the complaint, Carpenter asserts breach of contract claims against Underdal and Mockler, alleging that they violated the non-solicitation provision in the Sedgwick Agreement. The parties have filed cross motions for summary judgment on this claim. Restrictive covenants, such as the non-solicitation provisions in the Sedgwick Agreements, are "looked upon with disfavor, cautiously considered, and carefully scrutinized" under Minnesota law. *Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 361 (Minn. 1998) (quoting *Bennett v. Storz Broadcasting Co.*, 134 N.W.2d 892, 898 (Minn. 1965)). The restrictive covenant must be limited to its plain language and strictly construed. *Lemon v. Gressman*, No. C7- 98-2119, 1999 WL 451165, at *3 (Minn. Ct. App. July 9, 1999) (relying on plain language of non-compete agreement to reverse reformation of contract by trial court); *Ecolab v. Gartland*, 537 N.W.2d 291, 295 (Minn. Ct. App. 1995) (noting that "[p]ublic policy requires that restrictive covenants be strictly

construed"). Further, any ambiguities in a contract must be construed against the drafter. *Id.* at 295.

In Minnesota, a restrictive covenant may be assignable. *Saliterman v. Finney*, 361 N.W.2d 175, 178 (Minn. Ct. App. 1985). However, whether a particular restrictive covenant is assignable, or was effectively assigned, depends on the language of the contract and the circumstances of the case. *Id.*; *see also Inter-Tel, Inc. v. CA Commc'ns, Inc.*, 2003 WL 23119384, at *4 (D. Minn. Dec. 29, 2003) (citing *Saliterman*). In *Saliterman*, a dentist signed a restrictive covenant with a dental practice. The agreement prohibited the dentist from practicing dentistry within three miles of the dentist office after the termination of his employment. *Id.* at 176. The dental practice was sold, and several months later the dentist left the practice and opened his own practice within three miles of his former office. The new owner sued to enforce the restrictive covenant. *Id.* The Minnesota Court of Appeals held that Minnesota law did not prohibit the assignment of restrictive covenants, and that the dentist's agreement had been assigned and was enforceable by the new owner, because the contract language established that "the parties contemplated and assented to the future assignment of their respective interests, *unconditionally*." *Id.* at 178 (emphasis added).

*Saliterman* was considered by the court in *Inter-Tel*. *Inter-Tel.*, 2003 WL 23119384, at *4. In that case, as in *Saliterman*, employees had entered into restrictive covenants with their former employer. *Id.* The business was sold to a new owner, who later sought to enforce the restrictive covenants against the former employees. *Id.* In determining whether the restrictive covenants had been assigned to the new owner, the

court found that the restrictive covenants did not contain any language regarding assignment. *Id.* Relying on Minnesota courts' reluctance to enforce restrictive covenants and the absence of contract language permitting assignment, the court held that the restrictive covenants were not assignable. *Id.*

As a threshold matter, the parties dispute whether the Successors provision in the Sedgwick Agreement required Underdal's and Mockler's consent to assign or transfer that Agreement to Carpenter. The Successors provision states:

> <u>Successors</u>. This Agreement shall be binding upon and shall inure to the benefit of the heirs, successors and assigns of the parties; provided, however, that neither party may assign its duties and obligations hereunder without the consent of the other, which consent shall not be unreasonably withheld.

Underdal and Mockler assert that the language "neither party may assign its duties and obligations without the consent of the other" means that their duties under the Sedgwick Agreement could not have transferred to Carpenter until, at a minimum, Carpenter requested their consent to the transfer. Because it is undisputed that Carpenter never requested their consent, Underdal and Mockler argue that the Sedgwick Agreement did not transfer to Carpenter.

Carpenter disputes that the Successors provision required Underdal's and Mockler's consent to transfer to Sedgwick Agreement to Carpenter. First, Carpenter contends that because it merged with Sedgwick, it is a "successor," rather than an "assign," and therefore Carpenter succeeded to Sedgwick's rights and duties as a matter of law, regardless of the language contained in the Sedgwick Agreement itself.

Although Minnesota statutes provide that in a merger, the obligations and entitlements of the constituent organizations transfer to the surviving organization as a matter of law, these provisions are in the nature of a default rule, and do not prohibit parties from imposing additional conditions on the transfer of their particular obligations and entitlements in their own contracts and agreements. *See* Minn. Stat. § 302A.641, subds. 2(b), (d), (e); *Loving & Assocs., Inc. v. Carothers*, 619 N.W.2d 782, 785-86 (Minn. Ct. App. 2000). Notably, Carpenter has not identified, nor has the Court uncovered, any authority prohibiting parties from conditioning the transfer of rights and duties on the parties' reasonable consent to a transfer, especially where the agreement sought to be transferred is a restrictive covenant.[2] Indeed, any such prohibition would likely frustrate, if not contravene, the strong policy under Minnesota law of looking upon restrictive covenants with disfavor and construing them narrowly.

Carpenter further argues that, even if the Court examines the text of the Successors provision to determine whether consent was required, the plain terms of the provision do not require Underdal's and Mockler's consent to transfer the Sedgwick Agreements to

---

[2] The cases cited by Carpenter are not applicable to the case here, because none of those cases dealt with a restrictive covenant that contained a consent provision. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990) (restrictive covenant did not include a consent clause, and on the contrary, explicitly required assignment); *Loving & Assocs., Inc. v. Carothers*, 619 N.W.2d 782, 786-87 (Minn. Ct. App. 2001) (involved a guaranty, not a non-competition agreement, and there was no consent provision); *UARCO Inc. v. Lam*, 18 F. Supp. 2d 1116, 1122 (D. Haw. 1998) (restrictive covenant did not contain a consent provision); *Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579, 589-90 (Del. Ch. 1997) (non-competition agreement did not contain a consent provision); *Alexander & Alexander, Inc. v. Koelz*, 722 S.W.2d 311, 313 (Mo. Ct. App. 1986) (restrictive covenant was silent on issue of assignability); *Reuben H. Donnelly Corp. v. McKinnon*, 688 S.W.2d 612, 614-15 (Tex. Ct. App. 1985) (dealt with an assignment provision relating to advertising agreement between two companies, rather than a non-competition agreement, and has been criticized by other Texas courts, *see, e.g., Tex. Dev. Co. v. Exxon Mobil Corp.*, 119 S.W.3d 875, 880-81 (Tex. Ct. App. 2003)).

Carpenter. Carpenter asserts that although the provision may have required Underdal's and Mockler's consent to "assign" their duties to Carpenter, Carpenter is not an "assign," but rather is a "successor" because it is the surviving entity of the merger of Sedgwick and Carpenter. Carpenter further argues that the Successors provision does not require consent to transfer the Sedgwick Agreements to a "successor," but only requires consent to transfer the Sedgwick Agreement to an "assign." Carpenter adds that the word "assign" must be construed to mean the same thing in the first clause of the sentence as in the second, and that in the first clause, "assign" must have a narrow meaning because it is only one of three types of entities to whom the Agreement may be transferred. Accordingly, argues Carpenter, in the second clause, "assign" must similarly have a narrow meaning, and must only refer to a transfer to an assign.

Underdal and Mockler respond that "assign" cannot be given the same meaning in both clauses because they are not actually the same word: in the first clause, "assign" is a noun, and in the second, "assign" is a verb. Underdal and Mockler further argue that the noun "assign" is simply part of the boilerplate phrase "heirs, successors and assigns," and that the verb "assign" should be construed broadly to mean any transfer. Underdal and Mockler further support their argument that the noun "assign" is part of boilerplate language by arguing that they would not be able to "assign" their jobs to a third party, nor would an heir be able inherit their jobs, therefore the verb "assign" must be construed generally to mean any transfer.

The Court finds that the Sedgwick Agreements are clear and unambiguous, and that Underdal's and Mockler's consent was required to transfer the Sedgwick

Agreements to Carpenter. The plain language of the Successors provision states that Sedgwick Agreement "shall be binding upon and shall inure to the benefit of the heirs, successors and assigns of the parties; provided, however, that neither party may assign its duties and obligations hereunder without the consent of the other, which consent shall not be unreasonably withheld." Under the plain terms of the Agreement, Underdal's and Mockler's consent was required to "assign" the Sedgwick Agreements to Carpenter.

The Court also finds that the term "assign," used as a noun in the first clause, is simply part of the phrase, "heirs, successors and assigns," and that "assign," used as a verb in the second clause, is meant to refer to transfers generally, and not specifically to transfers to an assignee. This interpretation of the Successor provision respects the textual differences between the use of "assign" as a noun and a verb. Moreover, the only duty or obligation that Underdal and Mockler could transfer to a new company – whether a successor or an assignee – would be their employment duties. Although the law recognizes differences between transfers by sale of assets and transfers by merger, practically, these formal distinctions may have little impact on an employee's job at a new company. Logically, therefore, the verb "assign" refers generally to the entire phrase "heirs, successor and assigns," rather than simply one of the three entities.

In addition, the Court's interpretation of the Successors provision is supported by the strong policy under Minnesota state law of looking upon restrictive covenants with disfavor and construing them narrowly. Furthermore, to the extent that there is any ambiguity in the Successors provision regarding whether Underdal and Mockler's

consent was required, the Court would be required to construe the language of the agreement against the drafter, which was Underdal and Mockler's employer.

Therefore, the Court finds that the Successors provision required Carpenter to request Underdal's and Mockler's consent to transfer, which Carpenter failed to do.[3] Accordingly, the Court grants defendants' motion for summary judgment, and dismisses Carpenter's breach of contract claims against Underdal and Mockler (Count I).[4]

## V.   Tortious Interference

In Count IV of the complaint, Carpenter raises a tortious interference claim against Collins, asserting that Collins tortiously interfered with Underdal's and Mockler's Sedgwick Agreements, as well as Floden, Roehrig's and Kuhn's Nondisclosure Agreements. The parties have cross motions for summary judgment on this claim. Under Minnesota law, a claim of intentional interference with contract requires proof of five elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of

---

[3] The Court notes that Carpenter suggests that Underdal and Mockler's consent may be inferred by the fact that they continued to work at Carpenter after the merger. The Court disagrees. As explained above, the Successors provision clearly imposes a duty on Carpenter to request their consent, which Carpenter failed to do. Moreover, simply requesting consent would not have placed an onerous burned on Carpenter.

[4] The Court had previously denied Carpenter's request for a preliminary injunction prohibiting the individual defendants from disclosing confidential information, finding that Carpenter had repeatedly failed to make any showing that defendants actually possessed, or were disclosing, confidential information. *See*, *e.g.*, Docket Nos. 35, 36, 93. In *Guy Carpenter & Co., Inc. v. John B. Collins Associates, Inc.*, 2006 WL 1312547 (8th Cir. May 15, 2006), the Eighth Circuit vacated this Court's denial of Carpenter's motion for a preliminary injunction as it relates to the use or disclosure of confidential information, and remanded for further proceedings. Because the Court finds that, once again, Carpenter has failed to show that defendants actually possess, or are disclosing, any confidential information in violation of their duties under the Minnesota Uniform Trade Secrets Act or their contracts, the Court denies Carpenter's request for injunctive relief.

that contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Storage Tech. Corp. v. Cisco Sys. Inc.*, 395 F.3d 921, 924 (8th Cir. 2005).

Because the Court finds that the Sedgwick Agreements did not transfer to Carpenter and are not binding on Underdal and Mockler, Underdal and Mockler did not breach any contract with Carpenter, and therefore, one of the elements of a claim of tortious interference is lacking. In addition, because the Court finds that Floden, Roehrig and Kuhn did not breach their Nondisclosure Agreements, Carpenter's tortious interference claim with respect to those agreements fails as well. Accordingly, the Court grants defendants' motion for summary judgment on Carpenter's tortious interference claim against Collins (Count IV), and dismisses this claim.

## VI.     Breach of Duty of Loyalty

In Count V, Carpenter alleges that the individual defendants, Underdal, Mockler, Floden, Roehrig and Kuhn, breached the duty of loyalty. Defendants seek summary judgment on this claim. Under Minnesota law, an employee breaches the duty of loyalty to his employer by soliciting the employer's customers for a competing enterprise while the employee is still working for his employer. *See*, *e.g.*, *Bellboy Seafood Corp. v. Nathanson*, 410 N.W.2d 349 (Minn. Ct. App. 1987) (finding sufficient evidence to support a jury verdict on breach of fiduciary claim because defendant used customer lists, pricing lists, and accounts receivable aging reports and solicited employer's customers before ending his employment); *Sanitary Farm Dairies, Inc. v. Wolf*, 112 N.W.2d 42 (1961) (holding that employee may prepare to enter a competing business, but may not solicit his employer's customers before leaving the job).

Viewing the facts in the light most favorable to Carpenter, the Court finds that there are genuine issues of material fact, precluding summary judgment. Carpenter alleges that the individual defendants began competing with Carpenter while they were still employed by Carpenter. For example, Carpenter has offered evidence, including emails and the timing of events, tending to show that Underdal, Mockler, and Kuhn set up and scheduled client meetings while they were still working at Carpenter, but the meetings did not occur until after all the individual defendants had left Carpenter for Collins.

Defendants dispute that they breached their duty of loyalty to Carpenter, and have offered conflicting evidence regarding the scheduling of client meetings. Underdal acknowledges that he scheduled a client meeting with Mockler and Kuhn that would occur after he left, but he claims that he did not know that Mockler and Kuhn were also planning on leaving, and that he thought the client meeting would occur at Carpenter without him.

Thus, whether Underdal or the other individual defendants breached their duty of loyalty will depend, at least in part, on a credibility determination regarding defendants' explanations for their conduct. Credibility determinations are questions of fact, and therefore, the Court denies defendants' motion for summary judgment on Carpenter's claim for breach of duty of loyalty against Underdal, Mockler, Floden, Roehrig and Kuhn (Count V).

**VII.  Unjust Enrichment**

In Count VII, Carpenter claims that Collins was unjustly enriched when Underdal's and Mockler's clients decided to follow them and switch their business to Collins. Carpenter contends that it is entitled to recover the premiums paid by those clients to Collins. The parties have filed cross motions for summary judgment on this claim.

"To establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled and that the circumstances are such that it would be unjust for that person to retain the benefit." *Mon-Ray, Inc. v. Granite Re, Inc.*, 677 N.W.2d 434, 440 (Minn. Ct. App. 2004). The enriched party must gain the benefit "illegally or unlawfully." *Id.* (citation omitted). Further, "[w]here the rights of the parties are governed by a valid contract, a claim for unjust enrichment must fail and summary judgment is appropriate." *Colangelo v. Norwest Mortgage, Inc.*, 598 N.W.2d 14, 19 (Minn. Ct. App. 1999).

In support of its claim for unjust enrichment, Carpenter asserts that, in the reinsurance industry, similar to the insurance industry, a reinsurance broker earns its commission upon the placement of the reinsurance contracts request by the insurance company client. Carpenter further asserts that, under common law from other jurisdictions, "[a]bsent an agreement to the contrary, a broker earns its commission when it brings about the relationship of insurer and insured." *Hamond & Co., Inc. v. Risk Specialists Co. of N.Y., Inc.*, 619 N.Y.S.2d 744, 745 (N.Y. App. Div. 1994); *see also Cockrell v. Grimes*, 740 P.2d 746, 749 (Okla. Ct. App. 1987) (holding that "The agent's

right to a percentage of the premium on a policy is a property right which becomes fixed as soon as the policy is taken out, and then is realized when the premiums are actually paid from time to time.").

Defendants dispute that the reinsurance industry is similar to the insurance industry, and have offered some evidence of difference between the two industries. Although the issue of whether the reinsurance industry is similar to the insurance industry with respect to the collection and retention of insurance premiums may ultimately be a legal determination, that determination will depend, at least in part, on the detailed factual practices of the reinsurance industry.[5] Accordingly, the claim presents genuine issues of material fact and, therefore, the Court denies the parties' cross motions for summary judgment on this claim.

## VIII.  Unfair Competition

In Count VIII of the complaint, Carpenter raises claims of unfair competition against all defendants. Defendants seek summary judgment on this claim. Unfair competition is not a stand-alone tort with specific elements. *Zimmerman Group, Inc. v. Fairmont Foods of Minn., Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994) (quoting *Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 305-06 (Minn. Ct. App. 1987)). Rather, "it describes a general category of torts which courts recognize for the protection of

---

[5] As the parties have noted, the United States District Court for the District of Minnesota recently addressed a similar situation in *Benfield v. Moline*, 2006 WL 452903 (D. Minn. Feb. 22, 2006), where the court granted summary judgment on the plaintiff's unjust enrichment claim. Central to the court's holding in *Benfield* was the court's determination that the reinsurance industry was analogous to the insurance industry. Although that case is persuasive authority, the Court finds that, given the allegations raised by the parties in this case, the Court would benefit from a more detailed explanation of practices in the industry.

commercial interests." *Id.* In order to pursue a claim for unfair competition, a plaintiff must identify the underlying tort that is the basis for the claim. *Id.*

Carpenter bases its claim of unfair competition on the same underlying factual allegations as its other independent claims, and therefore the unfair competition claim is duplicative of Carpenter's independent claims. The Court grants defendants' motion for summary judgment, and dismisses Carpenter's unfair competition claim (Count VIII) as duplicative of its other claims. *See Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1034 (D. Minn. 2003) (noting that "if [the Court] find[s] that the underlying tort is duplicative of another Count of the Complaint, the claim for unfair competition must be dismissed").

## IX.   Punitive Damages

Carpenter requests leave to amend its complaint to state a claim for punitive damages. The trial court "has discretion in allowing a plaintiff to amend its complaint to assert punitive damages, but may not allow an amendment where the motion and supporting affidavits do not reasonably allow a conclusion that clear and convincing evidence will establish the defendant acted with willful indifference. *Gamma-10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1254-55 (8th Cir. 1994) (internal citations and quotations omitted).

The Court finds that Carpenter has failed to allege that defendants acted with "willful indifference" for the rights or safety of others. Rather, Carpenter's allegations are limited to the kind of allegations typically found in any action related to restrictive covenants. Moreover, the Court is dismissing several counts asserted by Carpenter.

Accordingly, the Court denies Carpenter's request for leave to amend its complaint to add a claim for punitive damages.

This case will be placed on the Court's next available trial calendar.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Joint Motion for Summary Judgment [Docket No. 102] is **GRANTED in part** and **DENIED in part** as follows:

    a. Defendants' motion is **granted** as to the breach of contract claims (Counts I and II), claims for trade secret misappropriation (Counts III and VI), tortious interference claim (Count IV), and unfair competition claim (Count VIII). These claims are **DISMISSED WITH PREJUDICE**.

    b. Defendants' motion is **denied** in all other respects.

2. Plaintiff's Motion for Summary Judgment in Part [Docket No. 97] is **DENIED**.

**IT IS FURTHER HEREBY ORDERED** that plaintiff's request for leave to amend the complaint to state a claim for punitive damages is **DENIED**.

DATED:   August 29, 2006                              s/ John R. Tunheim
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                        United States District Judge